IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARIE A. GARNER,

    Plaintiff,

v.                                                             Civ. No. 18-181 MV/GBW

PRAKASH RANKA,

    Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO COMPEL

THIS MATTER comes before the Court on Defendant's Motion to Compel Complete Discovery Responses from Plaintiff. *Doc. 32*. For the reasons explained below, the Court will DENY Defendant's motion.

### I.    BACKGROUND

On January 29, 2018, Plaintiff filed a "Complaint for Personal Injury Due to Product Liability and Medical Negligence" in state court against Ethicon Endo-Surgery, Inc.; Ethicon, Inc.; Johnson & Johnson; and Prakash Ranka, M.D. *See doc. 1-2*. Plaintiff alleged all Defendants were liable for Plaintiff's injuries arising from the implantation of a surgical mesh product intended for treatment of medical conditions of the female pelvis. Plaintiff sued Ethicon, Inc., Ethicon Endo-Surgery, Inc., and Johnson & Johnson (collectively, "Ethicon Defendants"[1]) as the manufacturers and sellers of the mesh.

---

[1] Ethicon, Inc. is a subsidiary of Johnson & Johnson, and Ethicon Endo-Surgery, Inc. is a subsidiary of Ethicon, Inc. *Doc. 3* at 2–3.

Plaintiff sued Defendant Ranka as the doctor who recommended the mesh to Plaintiff and surgically implanted it. *See generally id*.

On February 22, 2018, Defendant Ethicon, Inc. removed the case to this Court on the basis of diversity jurisdiction. *Doc. 1*. On March 5, 2018, the case was transferred by order of the United States Judicial Panel on Multidistrict Litigation to the Southern District of West Virginia, for resolution of common questions of fact with similar cases filed against the Ethicon Defendants. *Doc. 8*. On May 24, 2019, the case was remanded to this Court, the Ethicon Defendants having been dismissed, for resolution of the claims against Defendant Ranka (hereinafter, "Defendant"). *Doc. 10*. On October 29, 2019, Plaintiff filed an amended complaint alleging medical negligence by Defendant in the implantation of the mesh. *Doc. 26*.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b) outlines the general legal standard for discoverability:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (2015). In order to be discoverable, therefore, material must be both relevant and proportional to the needs of the case. Information "need not be admissible in evidence to be discoverable." *Id*. However, "Rule 26 vests the trial judge

2

with broad discretion to tailor discovery narrowly." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

Under Federal Rule of Evidence 501, claims of privilege are governed by state law in diversity cases. *See Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998). In New Mexico, attorney-client privilege is governed by court rule. N.M. R. Ann. 11-503; *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 175 P.3d 309, 315 (N.M. Ct. App. 2007). The elements of the privilege are "(1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client." *Santa Fe Pac. Gold*, 175 P.3d at 315. A communication is "between privileged persons" when it is between the client and the client's lawyer or representative. N.M. R. Ann. 11-503(B)(1). Attorney-client privilege may be waived if the holder of the privilege voluntarily discloses the communication or consents to disclosure to a person not covered by the privilege. *Santa Fe Pac. Gold*, 175 P.3d at 320; N.M. R. Ann. 11-511.

Distinct from attorney-client privilege is the work-product doctrine, which is governed by Federal Rule of Civil Procedure 26(b)(3). *Frontier Refining*, 136 F.3d at 702 n.10 (citation omitted). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety,

3

indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). However, such materials may be discovered if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id*. Like attorney-client privilege, work-product protection may be waived if the party claiming the protection voluntarily discloses the work product to a party not covered by the doctrine. *United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008) (citation omitted).

Federal Rule of Evidence 408 prohibits admission of evidence of settlement offers, settlement agreements, and statements made during settlement negotiations. Fed. R. Evid. 408(a); *see United States v. Bailey*, 327 F.3d 1131, 1144 (10th Cir. 2003). Specifically, such evidence is not admissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Such evidence is, however, admissible for "another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

### III.   ANALYSIS

Defendant asks this Court to compel Plaintiff to respond to his Request for Production No. 5, which seeks

> all documentation and correspondence between you, your
> attorney's [sic] and/or agents and any entity, including

> insurance companies, concerning any settlement agreements entered into by you regarding the use and insertion of the pelvic mesh which is the subject of this lawsuit, including but not limited to any correspondence with agents or representatives of [Ethicon Defendants]. This request including [sic] but is not limited to every policy, settlement agreement, email, and demand letter, letter to or from any insurance company and/or [Ethicon Defendants], and any other communication with any insurance company and/or [Ethicon Defendants], whether electronically stored or not.

*Doc. 32-1* at 1–2. Plaintiff objects to this request on the ground that Defendant seeks "confidential settlement communications protected by the Federal Rules of Evidence and attorney/client privileged documents." *Id.* at 2. In her response to Defendant's Motion, Plaintiff also indicates that the material sought is subject to work-product protection. *Doc. 33* at 6.

As the Court understands Defendant's request, the only documents that Defendant seeks are communications between Plaintiff (and her attorney and agents) and the Ethicon Defendants (and their representatives, agents, and insurers). Communications between a party's attorney and opposing parties are not protected by either attorney/client privilege or work-product protection. Therefore, the Court agrees with Defendant that neither doctrine protects Plaintiff from disclosing the requested documentation.

The only question, then, is whether the protection afforded to settlement communications by Federal Rule of Evidence 408 supports Plaintiff's objection. Because Rule 408 is a rule of admissibility and not discoverability, it does not prevent a party

5

from discovering evidence relating to settlement offers or statements made during settlement negotiations. *Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 866 F. Supp. 1560, 1576 (D.N.M. 1994). On the other hand, Rule 408 embodies a public policy favoring out-of-court settlement of disputes, in which confidentiality is necessary to promote the free and frank exchange of information and encourage parties to make concessions. *Id.*; *E.E.O.C. v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1545–46 (10th Cir. 1991); *Clark v. Stapleton Corp.*, 957 F.2d 745, 746 (10th Cir. 1992). The Advisory Committee on the Federal Rules of Evidence has expressed two rationales for excluding settlement communications:

> (1) The evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position. The validity of this position will vary as the amount of the offer varies in relation to the size of the claim and may also be influenced by other circumstances. (2) [A] more consistently impressive ground is promotion of the public policy favoring the compromise and settlement of disputes.

Fed. R. Evid. 408 advisory committee's note to proposed rule.

In light of these policy considerations, some courts have imposed a heightened standard for discovery of confidential settlement communications. These courts have held that the party seeking discovery must demonstrate that (1) the party has a special need for the materials; (2) unfairness would result from a lack of discovery of the materials; and (3) the party's need for the evidence outweighs the interest in maintaining confidentiality. *United States ex rel. Strauser v. Stephen L. Lafrance Holdings, Inc.*, 2019 WL 6012850, at *2 (N.D. Okla. Nov. 14, 2019); *In re Teligent, Inc.*, 640 F.3d 53, 58

6

(2d Cir. 2011). This Court need not decide whether to apply this heightened standard, however, because Defendant has failed to demonstrate that the communications are relevant to his defense.

Defendant contends that the settlement communications are necessary to ascertain the "theories of liability on which Plaintiff recovered against the Ethicon Defendants and [their] insurers." *Doc. 32* at 2–3. Defendant speculates that a product defect was "the most likely avenue for Plaintiff's recovery" and therefore the information is relevant to the issue of comparative fault. *Id*. at 3. Defendant does not assert that he requires the settlement communications in order to ascertain any underlying facts regarding defects in the mesh. Thus, Defendant's sole reason for discovering these communications is to use them as evidence of liability, which Rule 408 prohibits.

In elaborating on his request, Defendant speculates "that Plaintiff is attempting to hide provisions, admissions, and acknowledgements embodied in the requested documentation which are adverse to Plaintiff's position in the current case." *Id.* at 6. This justification directly implicates the first of the Advisory Committee's concerns about settlement communications. A party may take a position for the purpose of reaching a settlement without intending it as a concession. Thus, any "admissions" elicited for purposes of settlement are unlikely to shed light on the proper allocation of liability between Defendant and the Ethicon Defendants.

7

Defendant also argues that allowing Plaintiff "to recover under the theory that the TVT mesh was defective, and then proceed to make an inapposite argument in the current matter, while withholding the underlying correspondence, would frustrate the point of the adversarial system, be inequitable to defendants, and amount to a windfall for Plaintiff." *Id.* at 6. Assuming *arguendo* that the settlement communications contain statements that are contrary to Plaintiff's position against Defendant, the only relevance that the Court can see in such statements is that they provide a basis to impeach Plaintiff's credibility by prior inconsistent statement or contradiction. Rule 408 expressly prohibits this.

The potential for a "windfall" is also irrelevant to Defendant's defense. Any defendant who chooses to settle a case runs the risk of paying more than his fair share of liability. *See Wilson v. Galt*, 668 P.2d 1104, 1109 (N.M. Ct. App. 1983). Relatedly, "there is no right to reduction of a jury award based on out-of-court settlements when the case is tried on a theory of comparative fault." *Atler v. Murphy Enters., Inc.*, 104 P.3d 1092, 1100 (N.M. Ct. App. 2004) (citations omitted). Rule 408 prohibits evidence of the amount of a settlement offer for the same reason.

In summary, Defendant has failed to carry his burden of proving that the requested settlement communications are relevant to his defense. To be clear, the Court does not intend by this Order to prevent Defendant from ascertaining relevant facts concerning any defects in the mesh. However, the Court believes, based on the policy

considerations embodied in Rule 408, that the settlement communications sought are an inappropriate means of obtaining this evidence.

Finally, the Court denies both parties' requests for further relief based on their grievances about the other party's briefing of this matter. *See doc. 33* at 6, *doc. 35* at 4. The relevance of Rule 408 to matters of discoverability is nuanced and fact-specific. Each party's position was substantially justified.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Complete Discovery Responses (*doc. 32*) is DENIED.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE